HEATHER E. WILLIAMS, #122664
Federal Defender
LINDA HARTER, #179741
Chief Assistant for the Federal Defender
ADDY TANG
ALVIN YU
Certified Law Students
801 I Street, 3rd Floor
Sacramento, CA  95814
Tel: 916-498-5700   Fax: 916-498-5710

Attorneys for Defendant
Daniel Lester Hankins

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,            )<br>                                                           )<br>       Plaintiff,                                    )<br>                                                           )<br>       v.                                               )<br>                                                           )<br>DANIEL LESTER HANKINS,             )<br>                                                           )<br>       Defendant.                                 )<br>                                                           )<br>                                                           ) | 2:15-CR-084-EFB<br><br>NOTICE AND MOTION TO SUPPRESS STATEMENTS<br><br>Date:  August 21, 2015<br>Time:  2:00 p.m.<br>Judge:  Hon. Edmund F. Brennan |

PLEASE TAKE NOTICE that on August 21, 2015, at 2:00 p.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Edmund F. Brennan, U. S. Magistrate Judge, defendant Daniel Lester Hankins, through his attorneys, will move this Court to suppress statements made during his interview with GSA special agents on October 22, 2013. This motion is based upon the instant motion, all files and records in this case, and on such further evidence and argument as may be presented before or at the hearing on this motion.

**I.     Factual Background**

The relevant facts to this motion are as follows: On October 22, 2013, Daniel Lester Hankins was interviewed by GSA special agents, Scott Mumper and Lisa De Maria, about his

alleged involvement in the theft of GSA WEX credit cards. That day, while Mr. Hankins was working at the tool room of the Sierra Army Depot, he was contacted by Officer Edward "Wayne" Hubanks and escorted to Building P-100 for the interview. Mr. Hankins recalled that he was placed in handcuffs as he was being led to the Chief of Police's office where the interview was conducted, and the handcuffs were taken off right before the interview. He was not given a choice about whether he would go to the interview.

Special agents Mumper and De Maria told Mr. Hankins that his interview was voluntary in nature and that he was not in custody. They also told Mr. Hankins that the door of the room was unlocked and that he could leave. Without giving Mr. Hankins any Miranda warnings, the special agents proceeded to question him about whether he misused government credit cards to gas up personal vehicles for himself and his family members.

Mr. Hankins felt compelled to be there because he was ordered by law enforcement. During the interview, Mr. Hankins more than once vocalized his intent to be done with the interrogation. When he told Agent Mumper the first time that he was "done with this already," Agent Mumper paid no attention to his wish and pressed on with the questioning. The special agents repeatedly asked Mr. Hankins to tell the truth and admit to the fact that he and his family had been making fraudulent transactions on government credit cards. When Mr. Hankins told the special agents a second time that he was done with the interview, he said "we're done" twice, and twice the special agents ignored him. After Mr. Hankins said "we're done," one could hear some shuffling noise in the audio recording of the interview. The next thing heard on the recording was Agent Mumper speaking and asking Mr. Hankins to be honest with himself. Mr. Hankins remembered at one point he tried to stand up, but was pushed right back into his chair. He did not feel free to leave.

Near the end of the interview, Mr. Hankins said to the special agents, "I'm sorry I did it."

He also stated that he would never have done it in the first place if he had thought about it. When asked why he did it and whether it was because it was easy, Mr. Hankins said "[t]hat easy and hurting on money." The special agents understood Mr. Hankins' statements as an admission of guilt. He is subsequently charged with one count of conspiracy and forty-eight counts of theft of government property.

## II.   Custodial Interrogation

The Court should grant the motion to suppress Mr. Hankins' self-incriminating statements made during the interview because he was not given his Miranda rights during a custodial interrogation. Because the interview was custodial and the special agents did not inform Mr. Hankins of his 5th Amendment rights, Mr. Hankins' statements should be suppressed due to unlawful interrogation procedure. Miranda v. Arizona, 384 U.S. 436, 479 (1966).

Merely informing the defendant that he or she is free to leave or terminate the interview does not render an interrogation non-custodial *per se*. U.S. v. Craighead, 539 F.3d 1073, 1088 (9th Cir.2008). "[Courts] must consider the delivery of these statements within the context of the scene as a whole." *Id*. To determine whether a defendant was in custody for *Miranda* purposes, courts must ask the following questions:

> [F]irst, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve "the ultimate inquiry": "[was] there a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."

Thompson v. Keohane, 516 U.S. 99, 112 (1995). Thus, the *Miranda* test for custody is not whether a defendant was told he or she was free to leave, but whether a reasonable person would have felt he or she did not have the liberty to leave. Craighead, 539 F.3d at 1088.

The fact that the special agents told Mr. Hankins that he was not in custody and that he could "go straight out" did not make the interview non-custodial. The fact that Mr. Hankins was handcuffed to the interview did not make it voluntary. Considering the totality of circumstances

-3-

in Mr. Hankins' case, a reasonable person would have felt that he was not at liberty to leave the interrogation. When Mr. Hankins said he was done with the interview, the special agents did not stop the interrogation. Audio recording of the interview does not accurately reflect what actually happened after Mr. Hankins said "we're done." Mr. Hankins said that he tried to get up from his seat, but was pushed back down. Because the special agents restrained Mr. Hankins' freedom of movement when he wished to be done with the interrogation, the interview was custodial and involuntary.

**III.     Conclusion**

For these reasons, the defendant asks the court to suppress any statements made during the unlawful interrogation on October 22, 2013. Through discussions with the government it appears that there may be a factual dispute regarding the events and we therefore request an evidentiary hearing to determine the exact circumstances of the interview.

DATED: July 24, 2015                         Respectfully submitted,

                                             HEATHER WILLIAMS
                                             Federal Defender

                                             /s/ Linda Harter

                                             LINDA HARTER
                                             Chief Assistant to the Federal Defender
                                             Attorneys for Daniel Lester Hankins